MARTIN & ALLISON LTD.
Robert D. Martin (# 1230)
Cheryl C. Bradford (#9765)
3191 East Warm Springs Road
Las Vegas, Nevada 89120-3147
Tel    (702) 933-4444
Fax    (702) 933-4445

*Attorneys for Mark E. Brown,*
*Eugene I. Davis, Robert Forbuss,*
*Thomas Y. Hartley, Dr. Ikram Khan,*
*Paul R. Kimmel, Thomas R. Moyes,*
*and Samuel Clay Rogers*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE CO., a Florida corporation, | Case No.  2:07 cv-00949-PMP-GWF |
| Plaintiff, | **MOTION FOR SUMMARY JUDGMENT**<br>**ORAL ARGUMENT REQUESTED** |
| vs. | |
| MEDICOR, LTD., a Delaware corporation; DONALD K McGHAN; JAMES J. McGHAN; MARC S. SPERBERG; THEODORE R. MAHONEY; THOMAS R. MOYES; SAMUEL CLAY ROGERS; PAUL R. KIMMELL; EUGENE I. DAVIS; MARK E. BROWN; THOMAS Y. HARTLEY; ROBERT FORBUSS; AND IKRAM KHAN, | |
| Defendants. | |

Defendants Thomas R. Moyes, Samuel Clay Rogers, Paul R. Kimmel, Eugene I. Davis, Mark

E. Brown, Thomas Y. Hartley, Robert Forbuss, and Ikram Khan ("MediCor BOD Defendants")

hereby move the Court to dismiss Carolina Casualty Insurance Company's ("Carolina Casualty")

Complaint.  Defendants' motion is made pursuant to Fed. R. Civ. P. 56 and is supported by the

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

following Memorandum of Points and Authorities and the attached declarations.

DATED this ____ day of November, 2007.

MARTIN & ALLISON LTD.

By *Cheryl C. Bradford*
Robert D. Martin (# 1230)
Cheryl C. Bradford (#9765)
3191 East Warm Springs Road
Las Vegas, Nevada 89120-3147

*Attorneys for Mark E. Brown, Eugene I.
Davis, Robert Forbuss, Thomas Y.
Hartley, Dr. Ikram Khan, Paul R.
Kimmel, Thomas R. Moyes, and Samuel
Clay Rogers*

## I.

## INTRODUCTION

MediCor Ltd. ("MediCor") is a breast implant company that was founded in 1999 by Donald McGhan ("McGhan"), who was considered a pioneer in the breast implant industry. MediCor acquired developed, manufactured, and marketed products for medical specialties in the aesthetic, plastic, and reconstructive surgery and dermatology markets.

Carolina Casualty issued the MediCor Directors' and Officers' and Corporate Liability Insurance Policy No. 1706787/1 (the "Policy"), effective during the period of June 30, 2006 to June 30, 2007 (the "Policy Period"). The Policy provides a $5 million primary limit of liability for claims made during the policy period. The term "Claim" is defined at Clause III(A) of the Policy to include "a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief which is commenced by: a)service of a complaint or similar pleading."

McGhan also was involved with Southwest Exchange Inc. ("SWX"), a purported qualified intermediary under 26 U.S.C. §1031 and Chapter 645 of the Nevada Revised Statutes. Southwest closed its doors in January 2007 because it was allegedly no longer able to fund the Internal Revenue Code Section 1031 like-kind exchanges for which it had agreed to act as a qualified intermediary. As a result, multiple lawsuits were filed (the "SWX Complaints") alleging that in February 2003, McGhan

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

1    formed a conspiracy with other individuals to steal the assets of Southwest Exchange clients held in

2    trust at Southwest Exchange to fund the operations and acquisitions of Medicor. The claims against the

3    MediCor Board of Director Defendants allege that the Board of Director defendants knew or should

4    have known about the alleged improper diversion of SWX assets to MediCor.

5        The MediCor Board of Director defendants filed claims on the Policy after they were served

6    with the SWX Complaints. Carolina Casualty denied coverage under its directors and officers liability

7    policy (the "D&O Policy") and filed this action for declaratory relief seeking to avoid coverage under

8    its issued policy.  Summary Judgment should be granted in this matter as to the Board of Director

9    Defendants because the exclusion that Carolina Casualty relies on to deny coverage does not apply to

10   this group of defendants.

## II.

### STATEMENT OF FACTS

**A.    MediCor**

MediCor is a breast implant company that was founded in 1999 by Mr. McGhan.  MediCor acquired, developed, manufactured, and marketed products for medical specialties in the aesthetic, plastic, and reconstructive surgery and dermatology markets.  Products included surgically implantable prostheses for aesthetic, plastic, and reconstructive surgery and scar management products.  MediCor's products were sold worldwide to hospitals, surgery centers and physicians through various distributors and direct sales personnel. Upon the action of the MediCor Board, MediCor filed bankruptcy in June 2007 and is currently in receivership.

**B.    MediCor's D&O Coverage**

MediCor purchased Directors' and Officers' and Corporate Liability Insurance Policy effective during the period June 30,2006 to June 30, 2007 (the "Policy Period") bearing Policy No. 1706787/1 from Carolina Casualty. Defendants have requested coverage under the Policy for Costs of Defense and/or indemnity for judgments or settlements in connection with the SWX Lawsuits. The amounts at issue in the SWX Lawsuits exceed the Limit of Liability under the Policy, which is $5 million.

27   ///

28   ///

*MARTIN & ALLISON LTD.*
*3191 E. Warm Springs Road*
*Las Vegas, Nevada 89120-3147*

C.     **The SWX Lawsuits**

SWX was a purported qualified intermediary under 26 U.S.C. §1031 and Chapter 645 of the Nevada Revised Statutes. Southwest closed its doors in January 2007 because it was allegedly no longer able to fund the Internal Revenue Code Section 1031 like-kind exchanges for which it had agreed to act as a qualified intermediary.

As a result, multiple lawsuits were filed. The SWX Complaints alleged that McGhan formed a conspiracy with other individuals to steal the assets of SWX clients held at SWX for among other purposes, to fund the operations and acquisitions of among other things, Medicor Ltd. ("MediCor"). Importantly, none of those allegations relating to MediCor involve the Innocent MediCor Board acting individually.

Plaintiffs further alleged that on June 12, 2004 individuals who were directors or officers of MediCor, particularly McGhan, Theodore Maloney ("Maloney") and Thomas Sperberg ("Sperberg") met with the Betty Kincaid ("Kincaid") of SWX to obtain her agreement to sell SWX to them. According to SWX Complaints, McGhan and Maloney, the CEO of MediCor, became directors of an entity named Capital Reef. On June 15, 2004, SWX became a wholly-owned subsidiary of Capital Reef, a Delaware Corporation formed by McGhan on that same date.

All of the SWX Complaints name McGhan, Maloney and Sperberg as defendants for their respective roles in arranging for the sale of SWX to Capital Reef. All of the SWX Complaints name MediCor as a defendant, because it was an alleged recipient of SWX funds. Plaintiffs in the Master Complaint also named as defendants additional Directors and Officers Moyes, Rogers, Kimmel, Davis, Brown, Hartley, Forbuss, and Khan. The claims against the MediCor Board of Directors allege that as members of the Board of Directors they knew or should have known about the improper looting of SWX assets to the benefit of MediCor, even though most of them were not yet board members and could not have been involved with MediCor's actions at the time of the alleged wrongdoing. The rest of the MediCor Board of Directors had absolutely no knowledge relating to the alleged looting of SWX, or that such alleged looting was the source of funds loaned to MediCor by persons other than SWX.

///

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

1    The SWX Lawsuits all involve similar underlying allegations that relate to the alleged

2    involvement of MediCor's directors and officers receiving funds that had been held by SWX as a

3    Section 1031 intermediary. According to the Plaintiffs, McGhan, Maloney, Sperberg, and MediCor's

4    directors and officers conspired to purchase SWX to use as a source of funds for MediCor and for their

5    personal use.

6    The SWX Lawsuits allege that in February 2003, Defendants McGhan, James McGhan and

7    Maloney, with two other individuals, formed a conspiracy to steal the assets of SWX clients held in

8    trust at SWX to fund the operations and acquisitions of MediCor. The SWX Plaintiffs contend that as

9    of early June 2004, McGhan had made approximately $13 million in loans to MediCor through an

10   entity he controlled called "I.I.I.," MediCor in turn had made a substantial earnest money commitment

11   to purchase a French company, Eurosilicone, and McGhan was seeking funds that would enable

12   MediCor to close the Eurosilicone purchase.

13   The SWX Plaintiffs allege that on June 12, 2004, McGhan, Maloney and Sperberg, among

14   others, met with the owner of SWX, Kincaid, to obtain her agreement to sell seventy-five percent of

15   SWX to them.    According to the SWX Plaintiffs, McGhan and Maloney, the CEO of MediCor,

16   became directors of an entity named Capital Reef which was formed on June 15, 2004, and which

17   purchased SWX on June 24, 2004. According to the SWX Plaintiffs, from June 15 to June 29, 2004,

18   McGhan's daughter, Nikki M. Pomeroy, replaced Kincaid as the signatory on the SWX accounts at

19   Smith Barney, and on June 28, 2004 Capital Reef which had no assets of its own, used $3 million in

20   SWX Section 1031 exchange funds to pay Kincaid for her agreement to sell her controlling interest in

21   SWX to Capital Reef. This alleged improper transaction in turn allegedly enabled MediCor to obtain

22   $37 million for the purchase of Eurosilicone, which kept MediCor and McGhan from losing their

23   earnest money previously paid.

24   All of the SWX Lawsuits name McGhan, Maloney and Sperberg as defendants, in light of their

25   alleged respective roles in arranging for the sale of SWX to Capital Reef, which, in turn, allegedly

26   enabled MediCor to obtain funds from SWX and all of the SWX Lawsuits name MediCor as a

27   defendant, because it was an alleged recipient of such funds. Plaintiffs in the Schott and Selakovic

28   lawsuit also allege that Defendants Moyes, Rogers, Kimmel and Davis, as directors of MediCor, knew

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

1    or should have known about the alleged improper diversion of SWX Section 1031 exchange funds to

2    MediCor, and Plaintiffs in the Southwest Receivership lawsuit name not only those four directors

3    (Defendants Moyes, Rogers, Kimmel and Davis) but also Defendants Brown, Hartley, Forbuss and

4    Khan.

5         The SWX Lawsuits seek recovery for federal Civil RICO violations (18 U.S.C. §1962(c) and

6    conspiracy to commit Civil RICO violations (18 U.S.C. §1962(d), state Civil RICO violations,

7    conspiracy to commit state Civil RICO violations, theft conversion, embezzlement, receiving stolen

8    property, breach of fiduciary duty, aiding breach of fiduciary duty, fraud/deceit, negligent

9    misrepresentation, contractual and tortious breech of contract, breach of covenant of good faith and

10    fair dealing, intentional interference with contractual relationship, alter ego, unjust enrichment,

11    negligence, negligence per se, civil conspiracy, breach of guaranty, consumer fraud, deceptive trade

12    practices, elder abuse and constructive trust.    Plaintiffs seek compensatory, punitive damages,

13    exemplary damages, and disgorgement from MediCor and certain named past and present directors

14    and officers.

15    **D.    Carolina Casualty Misapplies the Past Acts Exclusion**

16         The MediCor Board of Directors filed claims against Carolina Casualty requesting coverage for

17    the SWX lawsuits.    Carolina Casualty denied coverage and filed this action for declaratory relief.

18    Carolina Casualty alleges that Section IV. of the Policy, as modified by the "Addition to Section IV.

19    Past Acts Exclusion," precludes coverage under the Policy for Loss, including Costs of Defense, in

20    connection with a Claim "based upon, arising out of, directly or indirectly resulting from or in

21    consequence of, or in any way involving:

22

23         1.    any **Wrongful Act** which occurred on or before June 30, 2004, or

24
25         2.    any **Wrongful Act** occurring on or subsequent to June 30, 2004
     which, together with a **Wrongful Act** occurring prior to such date,
26         would constitute a **Related Wrongful Act**.

27
28         Carolina Casualty alleges the SWX Lawsuits are claims that are "based upon," "arise out of,"

"directly and indirectly result from or in consequence of," and "involve" alleged Wrongful Acts by

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

certain MediCor directors and officers (Messrs. McGhan, Maloney and Sperberg), that had occurred on or before June 30, 2004. Carolina Casualty further claims the alleged Wrongful Acts of MediCor directors and officers that occurred subsequent to June 30, 2004 would constitute "Related Wrongful Acts" together with the alleged Wrongful Acts occurring prior June 30, 2004, because all the Wrongful Acts alleged in the SWX Lawsuits as to MediCor and its directors or officers are related to the alleged improper transfer of SWX Section 1031 exchange funds to MediCor, and are therefore "logically or causally connected by reason of [a] common fact, circumstance, situation, transaction, casualty, event or decision." Carolina Casualty has failed to consider its obligations to each member of the Board of Directors, individually, and its obligations to those officers of MediCor who were not part of the alleged SWX scam.

### III.

### LEGAL ARGUMENT

**A.    Standard of Review**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings. Anderson, 477 U.S. at 255.

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

Moreover, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it sits to determine the substantive law to be applied in the case before it. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, (1941). Thus, Nevada law controls.

**B.      Each Medicor Director or Officer is a Separate Named Insured Under the D&O Policy**

The Policy provides coverage to each director or officer as a named insured. Section I of the Policy provides that the Policy shall pay the Loss of each and every Director or Officer of the Company arising from any Claim first made against the Directors and Officers during the Policy Period or the Extended Reporting Period (if applicable) for any actual or alleged Wrongful Act, except and to the extent that the Company has indemnified the Directors or Officers.  Section III(E) of the Policy defines Director or Officer as any past, present, or future duly elected or appointed directors or officers of the Company.  Additionally, Section III(G) of the Policy defines **Insured** as with respect to Coverages A. and B.2, any Directors and Officers. Thus, each officer and director is a separate named insured of Carolina Casualty, giving rise to the full sets of protection promised by Carolina Casualty to all of its insureds.

**C.      Carolina Cannot Prove the Past Act Exclusion Applies to All Directors**

The burden of proving the applicability of any exclusions or limitations on insurance coverage lies with the insurer.  Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir.1996).

**1.  The Past Act Exclusion Applies Only to Those Who Committed the Past Wrongful Act**

Here, the past acts exclusion does not apply across the board to all of the MediCor Board of Director and Officer Defendants.

The Insuring Agreement under section I(A) of the policy states the following:

> This Policy shall pay the Loss of each and every **Director or Officer** of the Company arising from any **Claim** first made against the **Directors or Officers** during the **Policy Period** or the Extended Reporting Period (if applicable) for any actual or alleged **Wrongful Act**, except and to the extent that the **Company** has indemnified the **Directors or Officers**.  The **Insurer** shall subject to section VI., advance **Costs of Defense** of such **Claim** prior to its final disposition.

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

Carolina relies on Section IV. of the Policy, as modified by the "Addition to Section IV. Past Acts Exclusion," which precludes coverage under the Policy for Loss, including Costs of Defense, in connection with a Claim "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.     any **Wrongful Act** which occurred on or before June 30, 2004, or

2.     any **Wrongful Act** occurring on or subsequent to June 30, 2004 which, together with a **Wrongful Act** occurring prior to such date, would constitute a **Related Wrongful Act**.

However, the policy also contains a severability clause with respect to certain exclusions, including the past acts exclusion, that precludes Carolina Casualty from imputing the wrongful act of a Director or Officer to other Directors or Officers for the purpose of determining the applicability of any Exclusion. The severability clause is as follows:

### MODIFICATION TO SECTION IV.
### SEVERABILITY OF EXCLUSIONS

In consideration of the premium paid for this Policy, it is understood and agreed that Section IV. of this Policy is amended by the deletion of the paragraph in brackets immediately following Exclusion C. and is replaced by the following:

IV:     [The Wrongful Act of a Director or Officer shall not be Imputed to any other Director or Officer for the purpose of determining the applicability of any Exclusion.}

It is important to note that this language is not only preset in the policy, but it makes sense. Otherwise, no one would ever agree to be an outside director of a corporation, even where the corporation has substantial D&O insurance because of the possibility that some prior act by some member of an earlier board would void coverage.

Based on the severability clause, Carolina Casualty must painstakingly evaluate the Wrongful Act Exclusion individually as to each MediCor Officer or Board of Director Defendant only where Carolina determines that there were such prior bad acts by that individual insured and, therefore, it could deny coverage under the prior acts exclusion. The severability clause requires that each insured

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

1   be treated as having a separate insurance policy. <u>Worchester Mut. Ins. Co. v. Marnell</u>, 398 Mass.

2   240, 245-246, 496 N.E.2d 158, 161 (1986) (presence of severability clause required court to construe

3   phrase "an insured" as "the insured claiming coverage."). The severability clause also negates the

4   effect of an "arising out of" exlusion. <u>L.C.S., Inc. v. Lexington Ins. Co.</u>, 371 N.J. Super. 482, 853

5   A.2d 974, 982 (App. Div. 2004). Where an insurance policy contains a severability clause, the phrase

6   "the insured" in a policy exclusion must be read to refer to the insured seeking coverage as opposed

7   to the "named insured" or "any insured". <u>Tri-S Corp. v. Western World Ins. Co.</u>, 110 Hawai'I 473,

8   492, 135 P.3d 82 (2006).

9        Here, the severability language of the policy manifests an intent to treat the insureds severally,

10  extending coverage to each as a separate named insured. In this case, the Policy does not contain any

11  limiting reference to indicate to whom the prior acts exclusion applies. In the absence of a phrase

12  expanding the clause's scope, the Past Acts Exclusion, read in conjunction with the severability

13  clause, only applies to the prior acts of McGhan, Sperberg, and Maloney. In other words, the

14  wrongful acts of one insured can not deprive other innocent insureds of coverage.

15     **2.  At a Minimum the Severability Clause is Ambiguous and Coverage Applies**

16       Any ambiguity in terms of an insurance contract should be resolved in favor of the insured and

17  against the insurer. <u>Farmers Ins. Exchange v. Young</u>, 108 Nev. 328, 331, 832 P.2d 376, 378 (1992).

18  Although an individual clause standing alone might appear to contain no ambiguity, the policy must be

19  read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions.

20  <u>National Union Fire Ins. Co. of State of Pa., Inc. v. Reno's Exec. Air, Inc.</u>, 100 Nev. 360, 364, 682 P.2d

21  1380, 1383 (1984).

22       An insurance contract will be given a construction which will fairly achieve its object of

23  providing indemnity for the loss to which the insurance relates, and will effectuate the reasonable

24  expectations of the insured. <u>Id</u>. Clauses providing coverage are interpreted broadly, so as to provide

25  the greatest amount of coverage to the insured. <u>Id</u>. Finally, when ambiguity in the language of a policy

26  exists, the court should consider not merely the language, but also the intent of the parties, the subject

27  matter of the policy, and circumstances surrounding its issuance. <u>Id</u>.

28

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

If the severability clause does not apply to the prior bad acts exclusion, it is difficult to discern what the insurance company *probably* meant to do when it drafted the coverage and exclusion provisions in the policy. The Severability Clause Endorsement to the policy explicitly states that each insured will be treated individually. The Past Act Exclusion does not state whose acts or which insured's acts would preclude coverage. Because insurance policy exclusions apply only to what is clearly intended to be excluded, and because ambiguities in insurance contracts are construed against the insurer, Carolina Casualty cannot avoid its duty in the underlying action on the ground that some of those claims appear to arise out of past wrongful acts.

**D.    Illusory Coverage Doctrine**

Allowing the prior bad acts exclusion to eliminate coverage for every named insured renders the policy's coverage illusory. Courts do not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased. <u>Bonner County v. Panhandle Rodeo Ass'n, Inc.</u>, 101 Idaho 772, 776, 620 P.2d 1102, 1106 (1980) ([T]he ambiguous circumstance in which a policy has been issued purportedly providing coverage but with exclusionary provisions which, if applied, would narrow that coverage to "defeat the very purpose or object of the insurance."). When a policy creates only an illusion of coverage, the insurer is estopped from denying coverage based on the illusion of coverage the insurer created. <u>Martinez v. ICRMP</u>, 134 Idaho 247, 999 P.2d 902 (2000).

Allowing the Prior Bad Acts exclusion to preclude coverage to each and every director based on one director's actions creates illusory coverage to the remaining directors. No director could ever trust that he or she was insured if this interpretation of the Policy is permitted. If Carolina is allowed to deny coverage to all members of the board of directors based on one director's actions, who would ever become a director? Any coverage offered by the corporations D&O policy would be an illusion of coverage to the directors if coverage depended on another director's actions.

///

///

///

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

**IV.**

**CONCLUSION**

Based on the foregoing, the MediCor Board of Director Defendants respectfully requests this Court grant Summary Judgment against Carolina Casualty.

DATED this ____ day of November, 2007.

<div align="right">

MARTIN & ALLISON LTD.

By _____
Robert D. Martin (# 1230)
Cheryl C. Bradford (#9765
3191 East Warm Springs Road
Las Vegas, Nevada 89120-3147

*Attorneys for Mark E. Brown, Eugene I. Davis, Robert Forbuss, Thomas Y. Hartley, Dr. Ikram Khan, Paul R. Kimmel, Thomas R. Moyes, and Samuel Clay Rogers*

</div>

MARTIN & ALLISON LTD.
3191 E. Warm Springs Road
Las Vegas, Nevada 89120-3147

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___9th___ day of November, 2007, I caused to be served a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT (ORAL ARGUMENT REQUESTED)** on the following person(s) by the following method(s) pursuant to NRCP 5(b):

| | |
|---|---|
| Mark S. Dzarnoski | Dominica C. Anderson |
| GENTILE DePALMA, LTD. | Ryan A. Loosvelt |
| 3960 Howard Hughes Pkwy, 9th Floor | DUANE MORRIS, LLP |
| Las Vegas, Nevada 89169 | 701 Bridger Ave., Suite 670 |
| *Attorneys for Defendants Donald K. McGhan* | Las Vegas, Nevada 89101 |
| *and James J. McGhan* | *Attorneys for Carolina Casualty Insurance* |
| | |
| Rew Goodenow | Joanne J. Matousk |
| PARSONS BEHLE & LATIMER | Dirk E. Ehlers |
| 50 West Liberty, Suite 750 | Duane Morris, LLP |
| Reno Nevada 89501 | 227 West Monroe Street, Suite 3400 |
| | Chicago, IL 60606 |
| Erik A. Christenson | *Attorneys for Carolina Casualty Insurance* |
| Scott S. Bell | |
| PARSONS BEHLE & LATIMER | Leah A. Ayala |
| 201 South Main Street, Suite 1800 | BAILEY MERILL |
| Salt Lake City, Utah 84111 | 8691 W. Sahara Ave., #200 |
| *Attorneys for Theodore R. Maloney* | Las Vegas, Nevada 89117 |

☐     by placing a true and correct copy of the above-mentioned document(s) in a sealed envelope, first class postage fully pre-paid, in the United States mail on

☐     by facsimile transmission only, pursuant to the amendment to the Eighth Judicial District Court Rule 7.26, by faxing a true and correct copy of the same to each at the facsimile number(s) indicated above.

X     By electronic service a true copy was served with all exhibits, electronically on designated recipients via electronic transmission of said document(s) as provided under Federal Rules of Civil Procedure.

*Mindy Warner*

An employee of MARTIN & ALLISON LTD.

<div style="writing-mode: vertical-lr">MARTIN & ALLISON LTD.<br>3191 E. Warm Springs Road<br>Las Vegas, Nevada 89120-3147</div>